IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:19-CV-00459-RJC-DCK

| | |
|---|---|
| CHARJDE NICOLE HUNTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| WALMART, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant's "Motion To Dismiss *Pro Se* Plaintiff's Complaint Pursuant to Rule 12(b)(6) Of The Federal Rules Of Civil Procedure" (Document No. 27). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be granted.

## I. BACKGROUND

Plaintiff Charjde Nicole Hunter ("Plaintiff" or "Hunter") initiated this action with the filing of a *pro se* "Complaint for Employment Discrimination" ("Complaint") in this Court against Walmart Inc. ("Walmart") on September 17, 2019. (Document No. 1). Plaintiff alleged claims for discriminatory termination of employment, unequal terms and conditions of employment, and retaliation based on race, color, and gender under Title VII of the Civil Rights Act of 1964 at 42 U.S.C. § 2000e *et seq*. Id. at pp. 3-4. Plaintiff alleges that Walmart terminated her "under the guise that [she] was being insubordinate and causing disturbances when speaking up on work conditions." Id. at p. 5.

Plaintiff filed a separate complaint in this Court on the same day in a related case, <u>Hunter v. Walmart, Inc.</u>, 3:19-cv-00460-RJC-DCK. In that case, the Honorable Robert J. Conrad, Jr. dismissed each of Plaintiff's claims without prejudice on initial review under 28 U.S.C. § 1915(e)(2), including a First Amendment claim, a mail fraud claim, and a retaliation claim under Title VII. (Document No. 4).

Although the facts alleged in Plaintiff's Complaint in the instant case are sparse, she attaches multiple exhibits to her Complaint that provide factual background for her claims.[1] In the Charge of Discrimination that Plaintiff filed on February 8, 2019 with the Equal Employment Opportunity Commission ("EEOC") after her termination, Plaintiff alleges that she was hired by Walmart in August 2018 and thereafter assigned as a "Data Administration Support Specialist IV" in Charlotte, North Carolina. (Document 1-2, p. 2). On August 16, 2018, she allegedly "reported to the Director that [her] supervisor was signaling [sic] [her] out." <u>Id.</u> A few months later, in November 2018, she "reported to Ethics that [she] felt uncomfortable because [her] co-workers were too aggressive." <u>Id.</u> Finally, in early January 2019, Plaintiff alleges that "a male coworker [with] whom [she] had a personal relationship was verbally abusive towards [her], showed up on [her] floor as well as sent numerous text messages to [her] and stared [her] down," but Human Resources did not conduct an investigation because the "complaint was not work-related," which she acknowledged. <u>Id.</u> at pp. 2, 25.

The only facts alleged in Plaintiff's Complaint include the following:

> Walmart Inc allowed for their managers to target me excessively under the guise that I was being insubordinate and causing disturbances when speaking up on work conditions. I was threatened to be terminated during week 2 by Lana Michelle Nelson

---

[1] "When ruling on a motion to dismiss, the Court considers 'the complaint in its entirety, as well as documents attached or incorporated into the complaint.'" <u>Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC</u>, 2020 WL 4756777, at *1 (W.D.N.C. Aug. 17, 2020) (quoting <u>E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.</u>, 637 F.3d 435, 448 (4th Cir. 2011)).

and told I was 'negative energy' and I barely knew her. My supervisor, Perry Herrington's harassment was excessive from training when put on the spot to perform upon request, to being written up 10/17/18 for asking a level III to add notes to an account to the date of my termination after speaking with him about my peer, Beatrice Lewis -who sat next to me, blocking me on her personal phone while notifying I was under pressure and experiencing difficulties with another peer, Christopher Douglas, who she thought was a good guy. HR, April Cunningham, was involved. After termination the company became nonresponsive and after several emails the CEO's office responded.

(Document No. 1, p. 5).

In Walmart's Position Statement to the EEOC Charge (also attached to the Complaint), Walmart indicates that it "did not discriminate against Ms. Hunter based on her sex, race, color or other protected characteristic, nor did it retaliate against Ms. Hunter." (Document No. 1-3, p. 16). Walmart suggests that Hunter "engaged in pervasive disrespectful conduct towards her fellow Associates and People Solutions Supervisor Perry Herrington," after which she was "given several months to improve her behavior but did not do so." Id. Many "predominantly African American and predominantly female" associates "continued to report that Ms. Hunter treated them in a rude, condescending and confrontational manner," thus justifying her termination. Id. Walmart's statement indicates that Hunter's employment was terminated on January 8, 2019. Id. at p. 19.

On May 18, 2020, the Honorable Robert J. Conrad, Jr. granted Plaintiff's motion to proceed *in forma pauperis*. (Document No. 14). However, the Court in that Order dismissed Plaintiff's claims for disparate treatment and discriminatory discharge under Title VII and her claim for sexual harassment. Id. at pp. 5-7. Plaintiff's claim for retaliation under Title VII survived initial review under 18 U.S.C. § 1915(e)(2)(B)(ii). Id. at p. 7.

Plaintiff filed a "Request For Punitive Damages" on June 22, 2020. (Document No. 20). On that same day, Plaintiff filed a "Motion To Seal Or Otherwise Restrict Public Access."

(Document No. 21). Defendant filed a "Partial Motion To Strike Portions Of *Pro Se* Plaintiff's Response To Defendant's Motion To Dismiss" (Document No. 34) on July 31, 2020. On January 28, 2021, Plaintiff filed a "Motion To Resolve Case Or Narrow Issues" (Document No. 39).

Defendant filed the pending "Motion To Dismiss *Pro Se* Plaintiff's Complaint Pursuant To Rule 12(b)(6) Of The Federal Rules Of Civil Procedure" (Document No. 27) on July 16, 2020, along with an accompanying "Memorandum In Support Of Defendant's Motion To Dismiss *Pro Se* Plaintiff's Complaint And Response In Opposition To Plaintiff's Request For Punitive Damages" (Document No. 28). Plaintiff filed a "Response To Defendant's Motion To Dismiss" (Document No. 33) on July 24, 2020.

The motion has now been fully briefed and is ripe for review and a recommendation to the presiding district judge.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

4

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

Defendant argues in the pending motion to dismiss that Plaintiff fails to state a plausible retaliation claim. (Document No. 28, p. 10). Defendant contends that Plaintiff "has not pled sufficient facts to plausibly allege the first and third elements of her claim." Id. On the first element of a retaliation claim, Defendant argues that "Plaintiff has not alleged that she engaged in any protected activity or that she reasonably believed that she was opposing conduct unlawful under Title VII." Id. at p. 11. None of the complaints that Plaintiff reported to various Walmart superiors, Defendant contends, contained reference to "conduct based on her race, color, sex, or any Title VII protected category." Id. at p. 8. Moreover, Defendant contends, Plaintiff has failed

5

to establish a "causal connection" between any protected activity in which she alleges she engaged and any alleged retaliation. Id. at p. 12.

Defendant also points out that "Plaintiff fails to allege any facts whatsoever to demonstrate that Mr. Herrington [Plaintiff's supervisor in the People Solutions Division at Walmart], the decision-maker with respect to her termination, had any knowledge of" her August 2018 report to the People Solutions Director that Herrington "was singling her out." Id. at pp. 4, 12. Defendant further highlights that Plaintiff's November 2018 complaints to Walmart's Ethics Hotline are not alleged to have been communicated to Herrington, and thus "the Court is left to speculate whether [he] knew or did not know about" the alleged protected activity. Id. at pp. 12. Finally, Defendant argues that there is an "obvious alternative explanation" for her termination that is "lawful" and "non-retaliatory" – her "interpersonal difficulties with her co-workers and superiors in the workplace" and the "disturbances" that she caused. Id. at p. 13 (internal citations and quotations omitted).

Plaintiff counters that "she was in fact written up, threatened with termination and ultimately terminated from her employment with Walmart, Inc. following multiple incidents [that she] reported." (Document No. 33, p. 1). She then restates the elements for a *prima facie* case of retaliation under Title VII and baldly asserts that she has a valid claim supported by "all of the criteria." Id.

Title VII prohibits employers from retaliating against employees because they have "opposed any practice made an unlawful employment practice" under Title VII or because they have "made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). Absent direct or indirect evidence of retaliation, Plaintiff must proceed to prove her retaliation claim using the burden-

shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Importantly, though, the McDonnell Douglas framework establishes "an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510 (2002). Thus, the Swierkiewicz Court decided that "a complaint in an employment discrimination lawsuit…need not include [specific] facts [establishing a prima facie case of discrimination] under the [McDonnell Douglas framework]," but rather the complaint must only comply with Fed.R.Civ.P. 8(a)(2)'s direction that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 508. Importantly, though, Swierikiewicz was decided before the Supreme Court's decisions in Twombly and Iqbal, which the Fourth Circuit recognized in McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 586-87 (4th Cir. 2015). Undoubtedly, under the Twombly and Iqbal pleading requirements, a complaint must establish "plausibility for obtaining [] relief, [] thus rejecting a complaint in which the plaintiff relies on speculation." Id. at 587. Post McCleary-Evans, then, while Plaintiff need not plead *specific* facts to survive a motion to dismiss showing her entitlement to relief that establish a prima facie case of Title VII retaliation, she is "required to allege facts [that plausibly] satisfy the elements of a cause of action" created by Title VII. Id. at 585.

The undersigned provides detail regarding the McDonnell Douglas framework, however, because the elements of a *prima facie* case of Title VII retaliation are important to at least keep in mind in evaluating the legal sufficiency of Plaintiff's Complaint under Rule 12(b)(6). The first step in this burden-shifting framework is for Plaintiff to establish a *prima facie* case of retaliation by showing: "(i) that [she] engaged in protected activity, (ii) that [her employer] took adverse action against [her], and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." Foster v. Univ. of Maryland-Eastern Shore, 787 F.3d 243, 250

7

(4th Cir. 2015) (internal citations and quotations omitted). If Plaintiff can establish a *prima facie* case of retaliation, the burden shifts to Defendant to proffer "a legitimate non-retaliatory reason" for her employment termination. Id. If Walmart can make such a showing, "the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons" were mere pretext. Id.

Given that district courts must construe *pro se* plaintiffs' complaints liberally, the undersigned has conducted a thorough review of the record, including the attached exhibits to the Complaint, in order to understand whether Plaintiff has made out a successful *prima facie* case of retaliation under Title VII. Estelle v. Gamble, 429 U.S. 97, 106 (1976) (*pro se* complaints are to be "liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers" (internal citations and quotations omitted)). In light of this review, the undersigned will analyze the below factors to decide whether Plaintiff has at least plausibly alleged the elements of a successful *prima facie* case of Title VII retaliation in evaluating the motion to dismiss.

**First Element of *Prima Facie* Title VII Retaliation Claim – Protected Activity**

As to the first element of a *prima facie* case of Title VII retaliation, the undersigned concludes that Plaintiff has plausibly alleged that she was "engaged in protected activity." Foster, 787 F.3d at 250. Protected activity constitutes "activity in opposition not only to employment actions actually unlawful under Title VII but also employment actions an employee reasonably believes to be unlawful." EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005). Title VII prohibits "employment discrimination" on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. After a thorough review of the record and consideration of each of the instances that could possibly constitute "protected activity," the undersigned has concluded that one of the occasions on which Plaintiff lodged complaints with Walmart superiors

about various issues before her alleged retaliatory termination on January 8, 2019 constitutes protected activity.

The first instance in which Plaintiff complained to the director of her division about her supervisor's treatment of her during training in August 2018, she alleges merely that she complained that she was "singled out" by her supervisor during training and "put on the spot." (Document No. 1, p. 5); (Document No. 1-2, p. 2). Plaintiff does not allege facts that connect her complaint to any kind of unlawful activity under Title VII – she does not allege that she complained to the director "that Mr. Herrington's treatment was based on her race, color, sex, or any Title VII protected category." (Document No. 28, p. 4).

The second instance in which Plaintiff could have possibly engaged in protected activity was through a series of emails that she exchanged with a Walmart "Associate Relations" team member based in California, Melvenia Ha, and occasionally Brad Glaze, also presumably on the Associate Relations team, in early November 2018. (Document No. 1-3, pp. 97-102); (Document No. 1-2, pp. 15, 29-32). After identifying a few individuals, including her supervisor, Herrington, who she believed "treated [her] in an unethical manner," she generally complained about an "aggressive" environment in which her coworkers were "bullying and unprofessional." (Document No. 1-3, p. 100). Nowhere, however, in her emails to the Associate Relations team member does she complain that her allegedly unfair treatment in the workplace was the result of discrimination on the basis of race, color, religion, sex, or national origin. Still, the absence of any explicit language in her emails about Title VII protected categories does not mean that this email exchange does not constitute protected activity. In fact, the Fourth Circuit has stated that allegations of "harassment" – which Plaintiff stated in her Complaint with reference to Herrington – is a "term of art," and "should [] be understood, in certain contexts, to encompass discrimination

on the basis of [] recognized protected statuses," even where the underlying report of workplace mistreatment does not "explicitly cite *racial* [or other forms of illegal] discrimination." Strothers v. City of Laurel, Maryland, 895 F.3d 317, 336 (4th Cir. 2018). The fact that Plaintiff alleged in her email to the Associate Relations team member both that she felt "that [Herrington] believes other people are more qualified to do [her] job" and that her superiors "give work to those they feel are worthy" suggests "severe misbehavior related to her identity—not a mere workplace squabble." Okoli v. City of Baltimore, 648 F.3d 216, 224 (4th Cir. 2011). Thus, as to Plaintiff's early November 2018 email exchange with the Walmart Associate Relations team, she has plausibly alleged that she was engaged in protected activity.

Finally, the exhibits attached to Plaintiff's Complaint reveal only two other instances that could possibly be construed as protected activity. Plaintiff allegedly complained to her supervisor about a coworker who "blocked" her personal cell phone. (Document No. 1-3, pp. 84-88). On a separate occasion, Plaintiff emailed April Cunningham in Human Resources regarding the "personal [intimate] relationship" that she had with a male coworker, who had become "clingy and manipulative." (Document No. 1-2, pp. 25-28). Human Resources declined to take further action because it was a "personal matter," which Hunter confirmed. Id. Both instances fail to qualify as protected activity for the same reason as the first event described above – Plaintiff does not allege that her complaints about her coworkers "had anything to do with conduct in violation of Title VII," and nothing in the underlying correspondence in these two instances could plausibly suggest that these complaints involved Title VII protected categories. (Document No. 28, p. 7). Instead, they concern interpersonal conflict related to Plaintiff's working relationship with her colleagues.

Thus, three of the circumstances in which Plaintiff complained about poor treatment by coworkers and supervisors do not amount to protected activity because the actions complained of

10

are not alleged to be unlawful under Title VII, and Plaintiff could not reasonably believe them to be so. See Parker v. Ciena Corp., 787 F. App'x 817, 820 (4th Cir. 2019) (holding that the district court rightly dismissed a plaintiff's Title VII retaliation claim because where the plaintiff "only alleged that he complained about general workplace grievances regarding [] rude treatment of him," absent an allegation that the complaint was about discrimination, the complaint did "not amount to protected activity"). But, as to her complaints in a November 2018 email chain about her supervisor (Herrington), another specialist (Demarrios Brown), the Human Resources Manager (Ashley Doty), and the director of her division (Michelle Nelson), Plaintiff has plausibly alleged that she was engaged in protected activity, given the implicit link in her email about their mistreatment of her and her identity. Thus, the undersigned concludes that Plaintiff has plausibly alleged the first element of a *prima facie* retaliation claim at the motion to dismiss stage, considering the facts in the light most favorable to Plaintiff.

**Second Element of a Successful Title VII Retaliation Claim – Adverse Employment Action**

Plaintiff has plausibly alleged that she was subject to adverse employment action given her termination, and thus she undoubtedly succeeds on the second element of a *prima facie* retaliation claim. See King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003) (plaintiff's "termination indisputably constituted adverse employment action").

**Third Element of a Successful Title VII Retaliation Claim – Causal Connection**

Even given the conclusion that Plaintiff plausibly pled that she engaged in protected activity for purposes of a valid Title VII retaliation claim and suffered an adverse employment action, her claim fails on the third element: the causal link between the protected activity and the retaliatory termination. "An employee may establish *prima facie* causation simply by showing that (1) the employer either understood or should have understood the employee to be engaged in

11

protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." Strothers, 895 F.3d at 336.

Although "temporal proximity [] tends to show causation," here, Plaintiff fails on the causation element because she still must allege that the individuals who terminated her were *aware* of her protected activity. Foster, 787 F.3d at 253; Strothers, 895 F.3d at 336, 337 (citing Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994)) (citing Fourth Circuit case in which four months between the employer learning about the protected activity and the employee's discharge elapsed, which was sufficiently close for causation purposes). The Court acknowledges that the alleged protected activity occurred in November 2018 – just two months before she was terminated in early January 2019. If Plaintiff plausibly pled that she engaged in protected activity, and if she plausibly pled that the individuals who terminated her were aware of her complaints of unfair treatment, she might succeed on the causal connection prong of the *prima facie* retaliation claim. But, she failed to allege that the individuals who terminated her – her supervisor, Herrington, Director of Human Resources Associate Relations, Melinda Greene, Human Resources Managers, Doty and Cunningham, and the Director of Human Resources in the People Solutions Division, Nelson – were aware that she had engaged in protected activity when she emailed the Associate Relations team in November 2018. (Document No. 28, p. 12); (Document No. 1-3, p. 20).

It "is absolutely necessary to establish the third element of the prima facie case [of retaliation]" that the plaintiff supply facts indicating "the employer's knowledge that the plaintiff engaged in a protected activity" because "an employer cannot take action because of a factor of which it is unaware." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998); see also Villa v. CavaMezze Grill, LLC, 858 F.3d 896, 901 (4th Cir. 2017) ("[i]f an employer…never realized that its employee engaged in protected conduct, it stands to

12

Case 3:19-cv-00459-RJC-DCK   Document 41   Filed 03/31/21   Page 12 of 16

reason that the employer did not act out of a desire to retaliate for conduct of which the employer was not aware"). At the motion to dismiss stage, courts in this circuit evaluating a complaint under Fed.R.Civ.P. 12(b)(6) have looked for some evidence that Plaintiff has adequately alleged "knowledge of the adverse actor" of her protected activity, because knowledge is required to prove causation. Valerino v. Holder, 2013 WL 12432290, at *11 (E.D. Va. Feb. 20, 2013) (collecting cases from the Fourth Circuit that have applied the requirement at the motion to dismiss stage that the plaintiff allege the actor implementing the retaliatory action had knowledge of plaintiff's protected activity); see also Constantine v. Rectors & Visitors of the Bd. of George Mason Univ., 411 F.3d 474, 501 (4th Cir. 2005) (on a 12(b)(6) motion to dismiss, citing the rule that "a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of her engaging in protected activity"). But see Pannachia v. City of Durham, 2021 WL 810358, at *3 (M.D.N.C. Mar. 3, 2021) (holding that since Dowe – which held that a plaintiff must prove employer knowledge of protected activity in a *prima facie* claim for retaliation – was a case at the summary judgment stage, the district court declined to impose that requirement at the motion to dismiss stage where plaintiff "raise[d] a right to relief above a speculative level" even in the absence of proof of knowledge).

      The undersigned does not here decide whether case law from this circuit requires that Plaintiff prove the Defendant's knowledge of her protected activity. Here, even evaluating the complaint in the light most favorable to the Plaintiff and setting aside a requirement of proof of knowledge, she has not raised her claim for relief above the level of speculation. Plaintiff's articulation of the underlying facts in the Complaint is extremely brief – leaving the Court to scan through pages of exhibits attached to her Complaint to find some possible connection between potential protected activity and her termination. Moreover, there exists an "obvious alternative

13

explanation" for her termination, which she herself acknowledges in her Complaint.[2]  McCleary-Evans, 780 F.3d at 588; (Document No. 1, p. 5); see also (Document No. 1-3, p. 19) (Walmart's position statement to the EEOC Charge indicates that it terminated Hunter's employment because "she [repeatedly] spoke disrespectfully to other Associates…was warned that her employment would be terminated if her behavior did not improve…[and she] continued to engage in" conduct that was "rude, condescending and confrontational").

Notwithstanding any potential validity to Plaintiff's allegations of interpersonal conflict between Plaintiff and her coworkers, she cannot find refuge in a Title VII retaliation claim because "Title VII does not establish a general civility code for the American workplace."  EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (internal citations and quotations omitted). Plaintiff has failed to establish facts that could plausibly meet the third element of a *prima facie* retaliation claim under Title VII, and thus, the undersigned respectfully recommends that Defendant's motion to dismiss be granted because Plaintiff's complaint is not "legally sufficien[t]."  Martin, 980 F.2d at 952.

### IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendant's "Motion To Dismiss *Pro Se* Plaintiff's Complaint Pursuant to Rule 12(b)(6) Of The Federal Rules Of Civil Procedure" (Document No. 27) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's "Request for Punitive Damages" (Document No. 20) be **DENIED as moot**.

---

[2] See (Document No. 4, Hunter v. Walmart, Inc., 3:19-cv-00460-RJC-DCK, pp. 5-6) (the Honorable Robert J. Conrad, Jr. concluded that Plaintiff in that related case – relying upon the same set of facts as the instant case – failed to state a Title VII retaliation claim because she "fails to allege that there is any causal connection between engaging in a protected activity and the adverse employment action of being terminated…the documents that Plaintiff submits as exhibits to her Complaint reflect that she was terminated due to a documented history of interpersonal difficulties with her co-workers and superiors and, ultimately, for disturbances related to her complaints to human resources regarding the texting habits…of a fellow employee with whom she had engaged in a sexual relationship").

14

**IT IS FURTHER RECOMMENDED** that Plaintiff's "Motion To Seal Or Otherwise Restrict Public Access" (Document No. 21) be **DENIED with prejudice**. Plaintiff does not appear to have satisfied the requirements of Local Civil Rule 6.1(c).

**IT IS FURTHER RECOMMENDED** that Plaintiff's "Motion To Resolve Case Or Narrow Issues" (Document No. 39) be **DENIED as moot**.

**IT IS FURTHER RECOMMENDED** that "Defendant's Partial Motion To Strike Portions Of *Pro Se* Plaintiff's Response To Defendant's Motion To Dismiss" (Document No. 34) be **GRANTED**. Plaintiff's "Response To Defendant's Motion To Dismiss" (Document No. 33) should be sealed.

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: March 31, 2021

David C. Keesler
United States Magistrate Judge